IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

JOSHUA E. SMITH, OCA # 472023,           )
                                         )
    Plaintiff,                           )
                                         )
v.                                       )    No. 3:14-cv-02003
                                         )
STATE OF TENNESSEE, METRO GENERAL        )    Judge Campbell
SESSIONS COURT, METRO POLICE             )
 DEPARTMENT SOUTH PRECINCT, and          )
DET. DARRY BALTIMORE, OFFICER JASON      )
KORENER, JAVON RANSOM,                   )
                                         )
    Defendants.                          )

**MEMORANDUM OPINION**

Plaintiff Joshua Smith, an inmate incarcerated at the Davidson County Sheriff's Office – Criminal Justice Center in Nashville, Tennessee, has submitted a civil complaint asserting claims under 42 U.S.C. § 1983 for violations of his constitutional rights, as well as state-law claims. He proceeds *pro se* and *in forma pauperis*. The complaint is before the Court for an initial review pursuant to the Prison Litigation Reform Act ("PLRA").

**I.    Standard of Review**

Under the PLRA, the Court must conduct an initial review of any civil complaint filed *in forma pauperis.* 28 U.S.C. § 1915(e)(2). Upon conducting this review, the Court must dismiss the complaint, or any portion thereof, that fails to state a claim upon which relief can be granted, is frivolous, or seeks monetary relief from a defendant who is immune from such relief. *Id.* The Sixth Circuit has confirmed that the dismissal standard articulated by the Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), "governs dismissals for failure to state a claim under [the PLRA] because the relevant statutory language tracks the language in Rule 12(b)(6)." *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010). Thus, to survive scrutiny on initial review, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

A *pro se* pleading must be liberally construed and "held to less stringent standards than formal

pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). *Pro se* status, however, does not exempt a plaintiff from compliance with relevant rules of procedural and substantive law. *See Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989) ("Neither [the Supreme] Court nor other courts . . . have been willing to abrogate basic pleading essentials in *pro se* suits.").

## II.    Factual Allegations

In his complaint, the plaintiff alleges that he was falsely arrested in May 2012, prosecuted for a shooting he did not commit, held in custody for 29 months prior to trial because of his inability to make bail, and finally acquitted of the crime at a jury trial that concluded on September 22, 2014.[1] He names as defendants the following: The State of Tennessee; Metro General Sessions Court, Metro Police Department South Precinct, Detective Darry [sic] Baltimore, Officer Jason Korener, and "victim" Javon Ransom.

More specifically, the plaintiff alleges that on May 19, 2013, Javon Ransom was shot. Ransom did not wait on the scene or call the police—he had a friend take him to the hospital. Meanwhile, defendants Detective Baltimore and Officer Korener received a "shots-fired" radio dispatch. They stopped and arrested the plaintiff simply because he was black and happened to be crossing the street in the vicinity of where the shooting had occurred. The plaintiff insists that he was stopped by Baltimore and Korener without probable cause and solely on the basis of racial profiling, because both officers knew he did not fit the shooter's description that they had received on the police radio. (The plaintiff states that it is unclear where the description of the shooter came from, since the victim did not call the police.) In any event, the plaintiff was picked up by Baltimore and Korenor and presented to the victim at the hospital for identification, approximately 90 minutes after the shooting. The victim was wheeled out in his hospital bed and asked whether he could identify the plaintiff as his shooter. He did. At the time of this identification, the plaintiff was in a police car, surrounded by police officers, only his head was visible, and the victim was approximately 10 to 15 feet away. The plaintiff insists that Ransom knew or should have known he could not positively identify his shooter in that setting, because he admitted later, during the preliminary hearing conducted by the Metro General Sessions Court, that he had not been able to get a good look at the shooter's face. In other words, the plaintiff's allegations give rise to an inference that Ransom's identification of him at the hospital was

---

[1] The plaintiff apparently remains in custody. He does not indicate on what charges.

negligent or made with reckless disregard for the truth. The plaintiff also states that Ransom lied under oath and committed "purgitive" (ECF No. 1, at 6) in court, which the Court construes to mean "perjury."

Despite the "lack of evidence," as the plaintiff characterizes it (ECF No. 1, at 5), the General Sessions Court declined to dismiss the charges at the preliminary hearing. Bail was set at $260,000. Because the plaintiff could not post a bond, he was held in custody until his acquittal in September 2014.

Based on these allegations, the plaintiff seeks damages from all the defendants in the amount of $1.56 million for "intentional infliction of fake arrest," defamation, "false accusation," emotional distress, perjury and racial profiling. The Court construes these claims also to encompass claims for false arrest and malicious prosecution.

## III. Discussion

The plaintiff's complaint was submitted on a form "Complaint for Violation of Civil Rights under 42 U.S.C. § 1983." The Court therefore presumes that the plaintiff intends to bring suit under § 1983, though he clearly asserts state-law claims as well. This Court's jurisdiction is premised upon the federal question presented by the claims under § 1983. The Court has supplemental jurisdiction over any state-law claims that "are so related to [§ 1983] claims in the action . . . that they form part of the same case or controversy." 28 U.S.C. § 1367(a).

To state a claim under § 1983, "a plaintiff must set forth facts that, when construed favorably, establish (1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under the color of state law." *Sigley v. City of Parma Heights*, 437 F.3d 527, 533 (6th Cir. 2006) (citing *West v. Atkins*, 487 U.S. 42, 48 (1988)). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994). A failure to identify a right, privilege or immunity secured by the Constitution that was violated will result in dismissal of the cause of action for failure to state a claim upon which relief can be granted.

### A. Claims Against Police Officers

Although the plaintiff purports to name defendants Baltimore and Korenor in their "official capacity," the factual allegations make it clear that he intends to bring suit against them for official actions taken in their individual capacity as well.

*1.     Individual-Capacity Claims*

The Court liberally construes the complaint to assert claims against these defendants in their individual capacity under 42 U.S.C. § 1983 for arrest without probable cause, and supplemental state-law claims of false arrest and malicious prosecution. Police officers are generally considered to act under color of state law, and the Fourth Amendment protects individuals from unreasonable searches and seizures. U.S. Const. Amend. IV. The question, for purposes of this Court's initial review under the PLRA, is whether the plaintiff alleges sufficient facts to state a colorable claim against these defendants under § 1983 for violation of his Fourth Amendment rights.

"A false arrest claim under federal law requires a plaintiff to prove that the arresting officer lacked probable cause to arrest the plaintiff." *Voyticky v. Vill. of Timberlake, Ohio*, 412 F.3d 669, 677 (6th Cir. 2005). *See also United States v. Torres-Ramos*, 536 F.3d 542, 554 (6th Cir. 2008) ("In the absence of probable cause, an arrest constitutes an unreasonable seizure in violation of the Fourth Amendment."). The plaintiff in this case alleges that he did not resemble the description of the perpetrator that had been provided to defendants Baltimore and Korener, that he was arrested simply for being black while crossing the road, that Baltimore and Korener knew or should have known that the victim did not actually see who shot him, and that the hospital identification was so flawed as to be completely unreliable. The Court finds, for purposes of the initial review, that the plaintiff has stated colorable claims under § 1983 against defendants Baltimore and Korener for violation of his Fourth Amendment rights. In addition, the Court has supplemental jurisdiction over any state-law claims for false arrest or imprisonment and malicious prosecution asserted against these defendants.[2]

*2.     Official-Capacity Claims*

An official-capacity claim is functionally equivalent to a claim brought against the entity that employs the individual named in his official capacity, because "[i]ndividuals sued in their official capacities stand in the

---

[2] To establish a claim of false arrest and imprisonment under Tennessee law, the plaintiff must prove "(1) the detention or restraint of one against his will and (2) the unlawfulness of such detention or restraint." *Coffee v. Peterbilt of Nashville, Inc.*, 795 S.W.2d 656, 659 (Tenn. 1990). *See also Little Stores v. Isenberg*, 172 S.W.2d 13, 16 (Tenn. Ct. App. 1943) ("False imprisonment is the intentional restraint or detention of another without just cause."). The tort of malicious prosecution also requires that the defendant unreasonably detain the plaintiff without probable cause. *Brown v. SCOA Indus., Inc.*, 741 S.W.2d 916, 919–20 (Tenn. Ct. App. 1987) (citations omitted).

-4-

shoes of the entity they represent." *Alkire v. Irving*, 330 F.3d 802, 810 (6th Cir. 2003) (citing *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)). Because the plaintiff sues the police officers in their official capacity, the Court construes the complaint as asserting a claim against their employer as well: the Metropolitan Government of Nashville and Davidson County ("Metro").

Metro is responsible under § 1983 only for its "*own* illegal acts. [It is] not vicariously liable under § 1983 for [its] employees' actions." *Connick v. Thompson*, 563 U.S.----, 131 S. Ct. 1350, 1359 (2011) (internal citations and quotation marks omitted). A municipality may be liable under § 1983 "only if the challenged conduct occurs pursuant to a municipality's 'official policy,' such that the municipality's promulgation or adoption of the policy can be said to have 'cause[d]' one of its employees to violate the plaintiff's constitutional rights." *D'Ambrosio v. Marino*, 747 F.3d 378, 386 (6th Cir. 2014) (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 692 (1978)).

"Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Connick*, 131 S. Ct. at 1359 (citations omitted). In this case, the plaintiff does not allege facts that suggest the existence of an illegal official policy that could give rise to municipal liability. The complaint fails to state a claim against Metro itself under § 1983, and therefore fails to state an official-capacity claim against the police officers under § 1983.

However, because there is a possibility of *respondeat superior* liability with respect to the plaintiff's supplemental state-law claims against the police officers, the Court will, for purposes of the initial review, permit the state-law claims to proceed against the defendant police officers in their official capacity.

### B. Claims Against Metro Police Department

The Police Department is an agency or unit of Metro and not a suable entity itself. *See Mathes v. Metro. Gov't of Nashville & Davidson Cnty.*, No. 3:10-cv-0496, 2010 WL 3341889, at *2 (M.D. Tenn. Aug.25, 2010) ("[F]ederal district courts in Tennessee have frequently and uniformly held that police departments and sheriff's departments are not proper parties to a § 1983 suit." (collecting cases)). The claims against the

police department are subject to dismissal on that basis alone.[3]

### C. Claims Against the State of Tennessee

The plaintiff lists the state of Tennessee as a defendant, but he does not actually identify the basis of his claims against the state. Regardless, the claims against the state are subject to dismissal because the state is not a suable entity under § 1983 and in any event is immune from suit pursuant to the Eleventh Amendment. *Quern v. Jordan*, 440 U.S. 332, 340–45 (1979); *see also Lawson v. Shelby Cnty., Tenn.*, 211 F.3d 331, 335 (6th Cir. 2000) ("[T]he [Eleventh] Amendment prohibits suits against a 'state' in federal court whether for injunctive, declaratory or monetary relief."). The only exceptions to a state's immunity are (1) if the state has consented to suit or (2) if Congress has properly abrogated a state's immunity. *S & M Brands, Inc. v. Cooper*, 527 F.3d 500, 507 (6th Cir. 2008). Neither of these exceptions applies to § 1983 suits against the state of Tennessee. *See Berndt v. Tennessee*, 796 F.2d 879, 881 (6th Cir.1986) (noting that Tennessee has not waived immunity to suits under § 1983); *Hafer v. Melo*, 502 U.S. 21, 25 (1991) (reaffirming that Congress did not abrogate states' immunity when it passed § 1983). The plaintiff's claims against the state of Tennessee must therefore be dismissed for failure to state a claim for which relief can be granted.

### D. Claims Against Metro General Sessions Court

Metro General Sessions Court is not itself a suable entity, and the claims against it are subject to dismissal on that basis. Moreover, insofar as the court is an agency or division of the state, it is subject to immunity to the same extent as the state. *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144 (1993). If Metro General Sessions Court is a division of Metro rather than a division of the state, the factual allegations in the complaint fail to support any claim for which relief may be granted against Metro based on any action or failure to act by the General Sessions Court itself. The plaintiff has not named as defendants any judicial employees of the General Sessions Court, but if he had, they would be entitled to absolute judicial or quasi-judicial immunity. *Miller v. Niblack*, 942 S.W.2d 533, 537 (Tenn. Ct. App. 1996). The claims against Metro General Sessions Court will be dismissed for failure to state a claim for which relief may

---

[3] The Court could construe the claims against the Metro Police Department as asserted against Metro itself. However, as set forth above, Metro cannot be vicariously liable for the acts of its police officers under § 1983, and the Court has already found that the official-capacity state-law claims against the police officers will be permitted to proceed. Consequently, even though not expressly named as a defendant, Metro is a *de facto* defendant in this action, and the Court has no need to construe the claims against the police department as asserted against Metro.

be granted.

### E. Claims Against Javon Ransom

Ransom, the victim of the crime the plaintiff was accused of committing, is a private individual rather than an employee of the state or county. The conduct of a private defendant is actionable under § 1983 only if his conduct can be fairly attributable to the state. *Catz v. Chalker*, 142 F.3d 279, 289 (6th Cir. 1998); *Collyer v. Darling*, 98 F.3d 211, 231–32 (6th Cir. 1996). The conduct of a private party may be fairly attributable to the state only if the conduct is so closely connected to the state that it may be fairly treated as that of the state. Here, there is no allegation whatsoever that Javon Ransom is a state actor or that his challenged actions may be fairly attributed to the state. Thus, the plaintiff fails to state a claim against Ransom entitling him to relief under § 1983.

Because the state-law claims against Ransom form part of the same case or controversy as the claims over which this Court has federal-question jurisdiction, the question is whether the complaint actually states any colorable state-law claim against Ransom. As set forth above, the plaintiff asserts that Ransom "lied" when he identified the plaintiff as the shooter, committed perjury, and lied under oath in court.

Though an individual might be subject to *criminal* charges for perjury if he intentionally lies in court under oath, he is absolutely immune from civil liability based on testimony given in court. *Briscoe v. LaHue*, 460 U.S. 325, 330–33 (1983); *Lucas v. State*, 141 S.W.3d 121, 133 (Tenn. Ct. App. 2004). However, the plaintiff also appears to state a claim for defamation based on Ransom's incorrectly identifying the plaintiff as the shooter during the police "show-up" at the hospital. The plaintiff alleges that Ransom knew or should have known that he could not make a reliable identification because he had not been able to get a good look at the shooter's face, and Ransom was unable to see the plaintiff's clothing or body during the hospital show-up. To establish a claim for defamation under Tennessee law, a plaintiff must prove that: "1) a party published a statement; 2) with knowledge that the statement is false and defaming to the other; or 3) with reckless disregard for the truth of the statement or with negligence in failing to ascertain the truth of the statement." *Sullivan v. Baptist Mem. Hosp.*, 995 S.W.2d 569, 571 (Tenn. 1999). It might be that Ransom enjoys some state-law privilege or immunity for incorrectly identifying the plaintiff as the perpetrator of the shooting during

the impromptu police show-up, *cf. Graves v. Bowles*, 419 F. App'x 640, 644–45 (6th Cir. 2011),[4] but at this stage in the proceedings, the Court finds that the plaintiff has stated a defamation claim against Ransom over which the Court has supplemental jurisdiction. The claim against Ransom will, for now, be permitted to proceed.

**IV.    Conclusion**

For the reasons set forth herein, the Court finds that the state of Tennessee is entitled to absolute immunity from suit under the Eleventh Amendment and that the complaint fails to state a claim for which relief may be granted against the Metro Police Department South Precinct and the Metro General Sessions Court. The claims against these defendants will therefore be dismissed. The complaint also fails to state a claim under 42 U.S.C. § 1983 against defendants Baltimore and Korener in their official capacity or against defendant Ransom; such claims must also be dismissed.

However, the Court finds for purposes of the initial review that the complaint states colorable claims under § 1983 and state law against Detective Baltimore and Officer Korenor in their individual capacity, under state law against Baltimore and Korenor in their official capacity, and under state law against Javon Ransom. These claims will be permitted to proceed past the initial review.

An appropriate order is filed herewith.

Todd Campbell
United States District Judge

---

[4] In *Graves*, the plaintiff had been charged and later acquitted of bank robbery. The plaintiff sued two witnesses who had been present at the robbery and had incorrectly identified him to police officers as the bank robber. The plaintiff asserted numerous theories of recovery including defamation. The Sixth Circuit held, under Kentucky law, that the two witnesses were entitled to summary judgment because there was no evidence that they had acted with malice or bad faith, and that statements made to law enforcement officers were subject to a qualified privilege. *Id.* at 645 (citing *Dossett v. N.Y. Mining & Mfg. Co.*, 451 S.W.2d 843, 846 (Ky. 1970) ("[T]he public interest requires that expressions of suspicions founded upon facts detailed and prudently made in good faith and as confidentially as circumstances will permit, to aid in detecting felonies do not give rise to an action for slander against the person expressing his suspicions. . . .").